1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14

K.L.F., a minor child,        )
                          ) No. CV-06-5079-CI
                          )
        Plaintiff,    ) ORDER GRANTING PLAINTIFF'S
                          ) MOTION FOR SUMMARY JUDGMENT
v.                        ) AND DIRECTING AN IMMEDIATE
                          ) AWARD OF BENEFITS
MICHAEL J. ASTRUE, Commissioner )
of Social Security,[1]      )
                          )
        Defendant.    )
                          )
_____ )

15
16
17
18
19
20
21
22

    BEFORE THE COURT are cross-Motions for Summary Judgment, noted
for hearing without oral argument on June 4, 2007. (Ct. Rec. 13,
14.)  Plaintiff filed a reply brief on May 23, 2007. (Ct. Rec. 16.)
Attorney David L. Lybbert represents Plaintiff; Special Assistant
United States Attorney Joanne E. Dantonio represents the
Commissioner of Social Security ("Commissioner").  The parties have
consented to proceed before a magistrate judge.   (Ct. Rec. 8.)

23
24
25
26
27
28

    [1]As of February 12, 2007, Michael J. Astrue became Commissioner
of Social Security.  Pursuant to FED. R. CIV. P. 25(d)(1),
Commissioner Michael J. Astrue should be substituted as Defendant,
and this lawsuit proceeds without further action by the parties. 42
U.S.C. 405 (g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 1

After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13) and directs an immediate award of benefits. Defendant's Motion for Summary Judgment (Ct. Rec. 14) is **DENIED.**

### JURISDICTION

An application for Social Security Income ("SSI") benefits on behalf of a minor child ("Plaintiff'), was filed on January 8, 2003, alleging disability since November 1, 1996, due to diabetes. (Tr. 32.)  The application was denied initially and on reconsideration. (Tr. 36-39.)  On February 24, 2005, an administrative hearing was held before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff and her mother, JoAnn Farris.  (Tr. 417-447.)  On August 30, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 14-24.) The Appeals Council denied a request for review on October 26, 2006. (Tr. 7-10.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  On November 20, 2006, Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1, 4.)

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was seven years old at onset, fourteen on the application date, and sixteen on the hearing date.  (Tr. 59, 434.)

At the administrative hearing held on February 24, 2005, Plaintiff and her mother testified.  (Tr. 418.)  On the hearing

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS – 2

date, Plaintiff was in the ninth grade attending an alternative high school where she had transferred in the middle of the previous school year. (Tr. 421.)  Plaintiff thought that her current grades were 2 B's, 2D's, and an F. (Tr. 421.)  Ms. Farris indicated that Plaintiff should be in the tenth grade but had not passed the previous year.  (Tr. 422.)  Plaintiff testified that she has physical conditions which affect her ability to attend school regularly, including dizziness, headaches, occasional vomiting, and fatigue; she also gets frustrated easily. (Tr. 422-423.)  Plaintiff usually naps after school for about two hours.  (Tr. 423.)  She thinks that her fatigue is caused by diabetes, which was diagnosed when she was seven years old.

Plaintiff has tried to control her blood sugars with insulin. (Tr. 423.)  She tests her blood sugars three times daily, and more often if she feels unwell.  (Tr. 424.)  Plaintiff takes 35 units of Lantus at night and NovoLog three times daily.  Even with this regimen, her blood sugars vary.  Plaintiff testified that recently her blood sugars tested in the 300-400 range; during the prior year, her levels were in the 200's. (Tr. 424.)  Plaintiff keeps a written log of the test results.  (Tr. 432-433.)  She thought she was hospitalized in 2003 for high blood sugars, but not in 2004.  (Tr. 425.)  Plaintiff has problems with memory.  When concentrating, she experiences headaches, blurred vision and dizziness.  (Tr. 426.)  This happens frequently, although some days are better than others.  Headaches last for an hour or two.  (Tr. 426.)  Plaintiff has trouble falling and staying asleep.  (Tr. 427.)  She tries to avoid people when feeling unwell because it makes her "grumpy."  (Tr. 428.)  Plaintiff missed school due to vomiting, headaches, and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 3

1   feeling unwell because of blood sugar levels. (Tr. 430.) She
2   sometimes stays after school for tutoring but is usually tired.
3   (Tr. 430.) Plaintiff played basketball in seventh and eighth grades
4   and football in eighth, but was not currently involved in extra-
5   curricular activities. (Tr. 431-432.) She was sent home from
6   school once (about two weeks earlier) for arguing. (Tr. 431-432.)
7   Plaintiff has experienced urinary tract infections. (Tr. 433.) She
8   gets along well with students and teachers. (Tr. 433-434.) Her
9   activities include shopping at the mall, going to the movies, and
10  eating out with friends. (Tr. 434.) Plaintiff walks for exercise,
11  sometimes helps her mother with dishes and vacuuming, and likes
12  writing poetry. (Tr. 434-435.)

13      Ms. Farris testified that in the "last few years" Plaintiff's
14  blood sugar fluctuations between low and high have been a lot worse.
15  (Tr. 441.) Although Plaintiff makes a good effort to monitor her
16  levels and takes medication appropriately, Ms. Farris noted that she
17  still experiences fluctuations -- sometimes in the middle of the
18  night. Ms. Farris has come home (from her job driving a school bus)
19  and found Plaintiff sleeping; at times she is cold and clammy. When
20  this happens, she helps Plaintiff retest, take more insulin, and eat
21  if necessary. (Tr. 441.) When Plaintiff doesn't feel well (i.e.,
22  she experiences nausea, headache, stomach pain, and/or vomiting),
23  she misses school. (Tr. 442.) Ms. Farris has seen Plaintiff having
24  difficulty concentrating. She observed that her daughter is
25  forgetful. Ms. Farris has seen Plaintiff isolate herself when she
26  feels unwell; this has included declining friends' invitations.
27  (Tr. 442-443.) Ms. Farris sometimes hears Plaintiff getting up
28  several times during the night. She observed that Plaintiff

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 4

1   frequently is tired.  (Tr. 445.)

2                **SEQUENTIAL EVALUATION PROCESS**

3        On August 22, 1996, Congress passed the Personal Responsibility
4   and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193,
5   110 Stat. 105 which amended 42 U.S.C. § 1382c (a)(3).  Under this
6   law, a child under the age of eighteen is considered disabled for
7   the purposes of SSI benefits if "that individual has a medically
8   determinable physical or mental impairment, which results in marked
9   and severe functional limitations, and which can be expected to
10  result in death or which has lasted or can be expected to last for
11  a continuous period of not less than 12 months."   42 U.S.C. §
12  1382c(a)(3)(C)(I) (2003).

13       The regulations provide a three-step process in determining
14  whether a child is disabled.  First, the ALJ must determine whether
15  the child is engaged in substantial gainful activity.  20 C.F.R. §
16  416.924(b).   If the child is not engaged in substantial gainful
17  activity, then the analysis proceeds to step two.  Step two requires
18  the ALJ to determine whether the child's impairment or combination
19  of impairments is severe.  20 C.F.R. § 416.924(c).  The child will
20  not be found to have a severe impairment if it constitutes a "slight
21  abnormality or combination of slight abnormalities that causes no
22  more than minimal functional limitations." *Id*.  If, however, there
23  is a finding of severe impairment, the analysis proceeds to the
24  final step which requires the ALJ to determine whether the
25  impairment or combination of impairments "meet, medically equal or
26  functionally equal" the severity of a set of criteria for an
27  impairment in the listings.  20 C.F.R. § 416.924(d).

28       The regulations provide that an impairment will be found to be

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 5

functionally equivalent to a listed impairment if it results in extreme limitations in one area of functioning or marked limitations in two areas.  20 C.F.R. § 416.926a (a).  To determine functional equivalence, the following six domains, or broad areas of functioning, are utilized: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself and health and physical well-being.  20 C.F.R. § 416.926a.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS – 6

293 (9th Cir. 1965).   On review, the court considers the record as

a whole, not just the evidence supporting the decision of the

Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)

(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve

conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence

supports more than one rational interpretation, the court may not

substitute its judgment for that of the Commissioner. *Tackett*, 180

F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Nevertheless, a decision supported by substantial evidence will

still be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision. *Brawner v. Secretary

of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

Thus, if there is substantial evidence to support the administrative

findings, or if there is conflicting evidence that will support a

finding of either disability or nondisability, the finding of the

Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found no reason to reopen Plaintiff's prior

application, which was denied on February 18, 2000, and declined to

do so.  (Tr. 14.)  At step one, the ALJ found that Plaintiff has not

engaged in substantial gainful activity.  (Tr. 14.)  At step two,

the ALJ determined that Plaintiff suffers from severe diabetes

mellitus in irregular control, with fluctuating blood sugar levels,

and a history of occasional secondary infections, quickly resolved

with appropriate treatment.  (Tr. 19.)  The ALJ determined that the

evidence of record demonstrated Plaintiff's impairments, although

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 7

severe, do not meet, medically equal, or functionally equal the criteria of any of the listings impairments. (Tr. 20-23.) With regard to functional equivalence, the ALJ concluded that Plaintiff does not have an "extreme" limitation in any domain of functioning or a "marked" limitation in two domains. (Tr. 24.) Accordingly, the ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 23-24.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1.  The ALJ erred by rejecting the opinion of Plaintiff's treating physician that her impairment meets Listing 109.08; and

2.  The ALJ erred by finding that Plaintiff's impairment does not result in limitations that are functionally equal to the Listings.

The court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. The first issue is dispositive.

**DISCUSSION**

Plaintiff argues the Commissioner should have determined that she meets Listing 109.08, based on a February 22, 2005, letter from her treating physician, Nikom Wannarachue, M.D. (Ct. Rec. 13 at 5.) The Commissioner responds the ALJ correctly found that Plaintiff's impairments do not meet or equal the Listing because the treating physician's opinion is not supported by evidence that Plaintiff had recurrent and recent episodes of hypoglycemia, and is conclusory. (Ct. Rec. 15 at 5-8.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 8

A.    <u>Juvenile Diabetes Mellitus - Listing 109.08</u>

Listing 109.08, for juvenile diabetes mellitus, requires:

*Juvenile diabetes mellitus (as documented in 109.00C) requiring parenteral insulin*.  And one of the following, despite prescribed therapy:

A.    Recent, recurrent hospitalizations with acidosis; or
B.    Recent, recurrent episodes of hypoglycemia;
C.    Growth retardation as described under the criteria in 100.02A or B; or
D.    Impaired renal functions as described under the criteria in 106.00ff.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 109.08 at p. 513 (2005).

On February 22, 2005, Plaintiff's treating physician Nikom Wannarachue, M.D., opined that Plaintiff's impairments meet Listing 109.08 under subsection B:

Despite reasonable attempts at monitoring her blood sugars and administrations of insulin, she has shown recurrent and recent episodes of hypoglycemia.  She has also had, in the past, hospitalization for acidosis associated with her diabetes.

Based on the above, I believe that she would meet listing 109.08 as described in the listing of impairment for children promulgated by the Social Security Administration.

It should be noted as well that due to weakness, fatigue, difficulty with concentration, etc. this young patient has had considerable difficulty maintaining regular attendance at school and therefore would have marked limitation in her ability to maintain her health and physical well being.

(Tr. 344.)

Section 1382c(a)(3)(I) of 42 U.S.C. directs that, before making a determination whether a child is disabled within the meaning of the Social Security Act, an ALJ must obtain a case evaluation by a pediatrician or other appropriate specialist who considers the record in its entirety.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014 (9th Cir. 2003).  Accordingly, a pediatrician, Roger J.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 9

Meyer, M.D., reviewed the record and completed his evaluation on April 24, 2005.  (Tr. 395-401.)  Dr. Meyer disagreed with Dr. Wannarachue's opinion.

The ALJ notes Dr. Meyer's opinion that Plaintiff does not meet the Listing requirements because she did not have recent, recurrent hospitalizations with acidosis; the periods of acidosis were not recent or recurrent; there was no evidence of recent growth retardation; and there was no impairment of renal function.  (Tr. 19, relying on Tr. 399-400.)  Dr. Meyer does not appear to address Plaintiff's recurrent and recent episodes of hypoglycemia, the primary basis for Dr. Wannarachue's opinion.  (Tr. 395-401.)

The ALJ acknowledged that because treating physician Dr. Wannarachue's opinion is uncontradicted, it could be rejected only for clear and convincing reasons supported by substantial evidence of record.  (Tr. 20.)  The ALJ stated:

> The undersigned finds that Dr. Meyer's explanation, which is supported by the evidence of record, provides clear and convincing reasons for rejecting the conclusions of the treating physician that the claimant's conditions meet the  requirements of section 109.08 of the Listing of Impairments. . . .  Dr. Wannarachue's statement that the claimant had experienced 'recent, recurrent episodes of hypoglycemia' was not supported by his clinic notes or by the medical evidence of record.  The record does not establish the presence of any one of the four acceptable criteria.

(Tr. 20.)  The ALJ went on to analyze whether Plaintiff's impairments "functionally equaled" the Listings.  (Tr. 20-23.)

The record reveals evidence of recent and recurrent episodes of hypoglycemia.

Dr. Wannarachue diagnosed Plaintiff with insulin dependent diabetes mellitus in July of 1996, when she was seven years old.  (Tr. 201, 299.)  (The diagnosis was confirmed on September 18, 1996,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 10

1  by Gad Kletter, M.D., at Children's Hospital.  (Tr. 197-198.))
2  Plaintiff was placed on an insulin and a medication regimen, and Dr.
3  Wannarachue reviewed Plaintiff's recorded blood sugar levels
4  periodically.    On August 19, 1996, Dr. Wannarachue added a
5  prescribed medication for vomiting.  He noted that Plaintiff's blood
6  sugars were high before dinner and at bedtime.  (Tr. 204.)    In
7  September of 1996, Dr. Wannarachue observed that Plaintiff's blood
8  sugar levels were mostly lower, around 100; but on October 30, 1996,
9  her blood sugar levels were elevated before lunch and dinner, and
10  before dinner, the readings were mostly over 200.    (Tr. 203.)
11  Accordingly, he increased Plaintiff's morning medication dosage and
12  instructed Ms. Farris how to increase the dosage of medication and
13  insulin on a sliding scale depending on Plaintiff's blood sugar
14  readings. (Tr. 203, continued at 206.)    On November 5, 1996, Dr.
15  Wannarachue again increased Plaintiff's morning medication dosage.
16  (Tr. 206.)  On November 15, 1996, Dr. Wannarachue wanted another
17  increase in Plaintiff's morning medication; however, Ms. Farris
18  advised that, because blood sugars were stable, she planned to
19  maintain the current dosage. (Tr. 206.) On November 26, 1996, Dr.
20  Wannarachue noted Plaintiff was doing quite well. (Tr. 206.)    On
21  February 13, 1997, Plaintiff's mother asked Dr. Wannarachue about
22  adjusting medication amounts using the sliding scale, and he
23  instructed her. (Tr. 205.)  Two weeks later, on February 27, 1997,
24  Ms. Farris reported blood sugar levels of 220-260; Dr. Wannarachue
25  advised increasing Plaintiff's morning dosage. (Tr. 205.)  In March
26  of 1997, a school nurse reported that Plaintiff had vomited twice on
27  March 16, 1997, and complained of a stomach ache lasting 4-5 days.
28  (Tr. 205.)    A possible urinary tract infection was diagnosed,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 11

although Plaintiff's UA was within normal limits.  Dr. Wannarachue prescribed an antibiotic.  (Tr. 208.)  In March or April of 1997 (the record is undated), Dr. Wannarachue noted that Ms. Farris was checking Plaintiff's blood sugar levels at lunchtime but not often before breakfast or dinner.  (Tr. 207.)  He instructed Plaintiff and her mother on the importance of testing at these times and adjusting medications.  (Tr. 207.)  On April 14, 1997, additional testing revealed the potential need to increase Plaintiff's insulin.  On August 29, 1997, Ms. Farris reported that Plaintiff's blood sugar levels had been rising during the last week: she reported levels of 225 (breakfast), 300 and 468 (noon), and 274 and 554 (dinner).  Dr. Wannarachue adjusted Plaintiff's medication.  (Tr. 207.)

Between September 2 and September 8, 1997, Plaintiff's glucose levels were elevated, reaching highs of 343, 351, 391, and 421.  On September 5 and September 9, 1997, Plaintiff's medications were adjusted.  (Tr. 210.)  On September 18, 1997, the school nurse reported elevated blood sugar levels, possibly as a result of a high calorie morning snack.  (Tr. 210.)  On September 30, 1997, medical personnel reviewed the basic principles of diabetes care as Ms. Farris did not appear to understand very well.  (Tr. 209.)  Plaintiff's glucose levels during the prior two weeks ranged from a low of 77 to a high of 554.  (Tr. 209.)  On October 15, 1997, Ms. Farris described high glucose readings in the morning.  (Tr. 211.)  Plaintiff's insulin dosage was adjusted.  (Tr. 211.)  On December 16, 1997, the school nurse reported very high afternoon glucose levels (289, 299, 360, and 409).  (Tr. 211.)  Plaintiff's morning medication dosage was increased, and Ms. Farris and her grandmother (who apparently packed Plaintiff's snacks) were instructed to send

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 12

vegetables as morning snacks rather than crackers, cheese and sandwiches. (Tr. 211-212.)

When Ms. Farris reported on January 14, 1998, that Plaintiff had a constant headache and readings of 73 to 78, her medication was decreased. (Tr. 212.) Two days later, Plaintiff's glucose level reached 342, and her medication again was adjusted. (Tr. 212.) On September 14, 1998, Dr. Wannarachue's office noted that Plaintiff has moved. (Tr. 212.)

On January 23, 1998, Plaintiff was seen by Bruce Wilson, M.D., a specialist in diabetes. (Tr. 218.)   Dr. Wilson noted:

> She is treated with a combination of regular insulin plus NPH, mixed.  She injects her mixture before breakfast and before dinner.  Her morning glucose levels are adequate.  She does develop elevations . . . during the afternoon or lunchtime in an inconsistent pattern.  There is a problem in that her mother is unavailable to supplement insulin during the day and the school nurse has no directions of how to do this.

(Tr. 218.)  Dr. Wilson planned to intensify Plaintiff's insulin therapy.  (Tr. 218.)

On September 30, 1999, Dr. Wilson noted that Plaintiff's blood sugars were always over 200, and occasionally over 500.  (Tr. 221.) He directed adjustments in her medications.  (Tr. 221.)  In October of 1999, Ms. Farris reported that Plaintiff said she was not going to do injections anymore.  (Tr. 222.)

Thus, from onset in 1996 through 1999, Plaintiff's blood sugars fluctuated widely.

On November 9, 2000, Dr. Wilson admitted Plaintiff, twelve years old, to the hospital with vomiting, back and abdominal pain, and headache.  (Tr. 248.)  She was diagnosed with hyperglycemia and moderate diabetic ketoacidosis.  (Tr. 234-235, 244, 249.)  This was

Plaintiff's second hospitalization for ketoacidosis; the first occurred when she was seven years old and first diagnosed. (Tr. 234.) Progress notes from the Kadlec Medical Center note that "the patient has had [sic] significant amount of difficulty in the past year with glycemic control and compliance issues." When she was admitted, Plaintiff's blood sugar was over 400 and she had acetone in her serum. (Tr. 234, 247.) Ronald Davis, M.D., noted that Plaintiff had complained of headaches and abdominal pain for a month and had missed a lot of school. (Tr. 249.) He noted that "she seems to have very dependent and acting out type of behavior." (Tr. 249-250.) An educational deficit and noncompliance are noted; Ms. Farris "does not quite understand the need for close supervision and the patient is left to her own devices consistently and has not shown the maturity to manage her diabetes alone at this point." (Tr. 235.) Dr. Davis remarked that the "child does seem resistant to change." (Tr. 235.)

On November 14, 2000, Plaintiff was again seen in the ER. (Tr. 251.) Her blood sugar was about 470. Dr. Davis noted that Plaintiff's "mother is frustrated because the blood sugars remain high, in spite of apparently aggressive treatment and recent hospitalizations." (Tr. 251.) Plaintiff also was currently being treated for a urinary tract infection. (Tr. 251.) She was given medication; insulin was to be administered on a sliding scale as Dr. Wilson had directed. (Tr. 252.)

When Plaintiff saw Michael Dolan, M.D., on November 28, 2000, he opined that she "is running chronically hyperglycemic because of pubertal hormonal changes." (Tr. 277-278.) Dr. Dolan's testing was consistent with a blood sugar average of about 315. (Tr. 278.) On

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 14

January 25, 2001, Dr. Donlan noted that Plaintiff's glycosylated hemoglobin was not improved. (Tr. 280.) On March 14, 2001, Dr. Donlan observed that Plaintiff had not done many blood glucose tests and "she appears to be 'burning out.'" (Tr. 281.) This was discussed with Plaintiff. (Tr. 281.)

On January 31, 2002, the notes of Faustino Riojas, M.D., indicate that Plaintiff's blood sugar was 350 the previous evening and "377 this morning." (Tr. 261.) On February 7, 2002, Dr. Riojas noted poor control with glucose levels in the 300-400 range. (Tr. 262.) He indicated that while Plaintiff, age 13, did not know why her levels remained high, he was "almost certain" that she was not following a proper diet; Plaintiff partially confirmed this by admitting she ate potato chips before coming to the clinic. (Tr. 262.) Plaintiff was counseled extensively on diet and the risk of damaging all of her organs. (Tr. 262.) On January 23, 2003, Dr. Riojas treated Plaintiff for an infected left earlobe and a dry rough rash on both upper arms. (Tr. 263.)

Plaintiff saw Jeanne Hassing, M.D., on March 7, 2002, indicating that she missed a lot of school this year due to headache, stomachache, and vomiting. (Tr. 273.) Plaintiff's mother recognized with alarm that her daughter's vomiting had recently increased in frequency. Plaintiff told Dr. Hassing that when in school she played basketball. (Tr. 273.) Dr. Hassing opined that Plaintiff was "at very high risk of diabetes complications with poorly controlled type 2 diabetes of seven-years duration." (Tr. 274.) She noted apparent school avoidance and Plaintiff's need for diabetes re-education. Dr. Hassing directed Plaintiff to test four times daily. (Tr. 274.) When she returned, Plaintiff reported

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 15

blood sugar levels from 150 to 200, and into the 300 range, with the morning readings all high.   (Tr. 275.)   Dr. Hassing adjusted Plaintiff's medication levels and on March 13, 2002, noted improved blood sugar levels.  (Tr. 275, 283.)

On December 14, 2003, Plaintiff was taken to the ER for a sore throat and vomiting.  (Tr. 302, 304.)  She was diagnosed with strep tonsillitis and, apparently for the third time, diabetes ketoacidosis. (Tr. 302.)  Plaintiff described feeling lethargic and having decreased appetite the previous evening; as a result, she forgot to take her evening dose of insulin.  (Tr. 302.)  Her blood sugar was 562.  (Tr. 302.)

Plaintiff returned to Dr. Wannarachue's care in August of 2004 and he ran several tests.  (Tr. 324.)  When he saw her on September 7, 2004, Plaintiff's left earlobe was severely infected.   Dr. Wanarachue noted that her blood sugar test results were "pretty high."  (Tr. 326.)  On October 8, 2004, he saw Plaintiff for a recurring left earlobe infection.  (Tr. 327.)  On October 12, 2004, Dr. Wannarachue saw Plaintiff for low back and lower abdominal pain. He assessed a possible urinary tract infection.  (Tr. 328.)  On November 4, 2004, test results for Plaintiff's hemoglobin A1c were 11.1 (action level is greater than 8).  (Tr. 342.)  When he saw Plaintiff on November 14, 2004, for stomach and back pain, Dr. Wannarachue assessed a urinary tract infection and possible arthritis.  (Tr. 329-330.)  Plaintiff developed a rash on her face and neck and complained of a sore throat and stomach cramps; her earlobe infection persisted.  (Tr. 331-332.)  On December 23, 2004, Dr. Wannarachue assessed a urinary tract infection, pyelonephritis and a yeast infection.   (Tr. 332-333.)   Testing of Plaintiff's

glucose levels showed highs of 402, 405, 407, 428 and 429, as recently as February 1, 2005.  (Tr. 346-362.)

As noted, on February 22, 2005 (two days before the hearing), Dr. Wannarachue opined that Plaintiff meets the requirements of Listing 109.08 based on recent and recurrent episodes of hypoglycemia.  (Tr. 344.)  The ALJ cited Dr. Wannarachue's clinic notes, his conclusory opinion, and "medical evidence of record" as clear and convincing reasons for rejecting treating physician Dr. Wannarachue's opinion that Plaintiff's impairment meets the Listing. The medical evidence of record relied on by the ALJ is the medical expert and the reviewing agency physicians, who opined that the Listing was not met but did not otherwise provide medical evidence.

Dr. Wannarachue's clinic notes appear to support rather than contradict his opinion.  Results of objective testing, in his and in other medical records, consistently show elevated and fluctuating blood sugar levels despite treatment.  The ALJ's second stated reason for rejecting Dr. Wannarachue's opinion, the opinion of reviewing physician Dr. Meyer and the medical evidence of record he relied on, is similarly unconvincing.  The ALJ does not point to the evidence relied on by Dr. Meyer.  As indicated, Dr. Meyer failed to address "recent and recurrent episodes of hypoglycemia," the factor on which Dr. Wannarachue primarily relied.  The ALJ gives weight to the agency reviewing physicians' opinions that Plaintiff's impairments do not meet or equal the Listing.  However, as the ALJ notes, a treating physician's opinion is entitled to greater weight than that of a reviewing physician.  The ALJ's last reason for rejecting Dr. Wannarachue's opinion is that it is "conclusory." This reason is similarly not clear and convincing.  Dr. Wannarachue

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 17

s

stated, in part:

> Her diabetes and blood sugar levels have been difficult to control. She is required to test multiple times during the day and be extremely responsible for monitoring activity levels, food intake, etc. She is not the only one of my young patients who has a difficult time trying to control her blood sugars. I believe medical factors affecting her difficulty to control her blood sugars would include the following:

> Age, maturity level, complexity of disease process affecting every facet of her life (i.e. activity, food consumption, personal relationships, and body image).

> Despite reasonable attempts at monitoring her blood sugars and administrations of insulin, she has shown recurrent and recent episodes of hypoglycemia.

(Tr. 344.) Dr. Wannarachue went on to find that Plaintiff's impairment meets the requirements of Listing 109.08.

The ALJ erred by failing to provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating physician that Plaintiff's impairment meets the requirements of Listing 109.08.

B. Remedy

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining doctor. The general rule, found in the *Lester* line of cases is that "we credit that opinion as a matter of law." *Lester*, 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister, supra*, a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke*, 379 F.3d at 594 (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where

evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzales v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). When credited as a matter of law, it is clear from the opinions of all physicians except the reviewing physician that Plaintiff is disabled. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **GRANTED**; the matter is **REMANDED** for payment of an immediate award of benefits.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED**.

3. Judgment shall be entered for **PLAINTIFF**. An application for attorney fees may be filed by separate motion.

4. The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file.

DATED July 23, 2007.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS – 19